LIFE OF THE LAND, CHARLES O. CARR, on behalf of himself and on behalf of LIFE OF THE LAND, CHARLES KAULUWEHI MAXWELL, SR., WILLIAM HALE, DR. SATYA SOOD, and MAX KINCAID, JR., Plaintiffs-Appellees, Cross-Appellants, *v.* THE LAND USE COMMISSION OF THE STATE OF HAWAII, EDDIE TANGEN, individually and in his official capacity, SHELLEY M. MARK, individually and in his official capacity, SUNAO KIDO, individually and in his official capacity, ALEXANDER J. NAPIER, individually and in his official capacity, TANJI YAMAMURA, individually and in his official capacity, EDWARD K. YANAI, individually and in his official capacity, JAMES CARRAS, individually and in his official capacity, MITSUO OURA, individually and in his official capacity, CHRISTOPHER COBB, in his official capacity, and HIDETO KONO, in his official capacity, and CASTLE & COOKE, INC., on behalf of themselves and all others similarly situated, Defendants-Appellants, Cross-Appellees

NO. 6405

FEBRUARY 4, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

168

OPINION OF THE COURT BY NAKAMURA, J.

Once again, we are called upon to decide procedural questions related to a judicial examination of the "comprehensive review of the classification and districting of all lands" in the State of Hawaii conducted by the Land Use Commission in 1974. In *Life of the Land v. Land Use Commission*, 58 Haw. 292, 568 P.2d 1189 (1977), our narrow ruling was that service of a copy of a notice of appeal was not a jurisdictional prerequisite for judicial review of a Land Use Commission order pursuant to HRS § 91-14. In *Life of the Land, Inc. v. Land Use Commission*, 61 Haw. 3, 594 P.2d 1079 (1979), we held Life of the Land had standing to seek review under § 91-14 as a "person aggrieved" by decisions of the Land Use Commission issued in furtherance of the "comprehensive review" conducted in 1974. In this Life of the Land case, a class action,[1] the issues are (1) whether

---

[1] Resort to a defendant class action probably was motivated by a desire to avoid procedural problems encountered in an earlier effort to have the results of the 1974 boundary review declared invalid. *See* Life of the Land v. Land Use Comm'n, *supra*, 58 Haw. at 298, 568 P.2d at 1194. There, the circuit court's dismissal of the action was premised, in part, on a purported failure to join indispensable parties, *i.e.*, all land-owners whose lands were rezoned. However, when the case reached us on appeal, we found the state of the record precluded a meaningful consideration of the joinder question. Thus, our reversal of the circuit court's dismissal of the action was on the narrow ground noted above.

 

the organization and several of its members who are neither owners of reclassified land nor owners of land adjoining reclassified land have standing to invoke judicial scrutiny of the procedures followed by the commission, as well as its determinations, by way of a declaratory action and (2) whether a class action involving a defendant class composed of all landowners whose lands were specifically reviewed for possible reclassification and redistricting may be maintained. Although we conclude the record and relevant principles of law support plaintiffs-appellees' standing to sue, we do not find the facts and the law sustain the circuit court's certification of the defendant class. We therefore reverse the order certifying the defendant class and remand the case for further proceedings.

I.

Prior to its repeal in 1975, HRS § 205-11[2] mandated a comprehensive review, commonly referred to as a boundary review, of the classification and districting of all lands in the state at the close of each five-year period subsequent to the adoption of the Land Use Law. In compliance therewith, the Land Use Commission conducted a review in 1974. The prodigious task entailed a survey of all the lands in Hawaii, as well as a specific review of the lands proposed for reclassification and redistricting. Proposals to reclassify a total of 133,438 acres of land were received and considered. For administrative convenience the commission categorized the proposals as 157 separate cases and dockets, primarily on the basis of ownership. And hearings on the proposed reclassifications, conducted on a "contested" basis, were held on each of the major inhabited islands.

---

[2] The applicable statutory provisions, since repealed, read as follows:

§ 205-11 Periodic review of districts. Irrespective of changes and adjustments that it may have made, the land use commission shall make a comprehensive review of the classification and districting of all lands and of the regulations at the end of each five years following the adoption thereof. The assistance of appropriate state and county departments shall be secured in making this review and public hearings shall be held in each county in accordance with the requirements set forth for the adoption in final form of district boundaries and regulations under this chapter.

The foregoing provisions were repealed by S.L.H. 1975, c. 193, § 9.

The final determinations following the commission's boundary review were announced in December of 1974. Some of the lands reviewed were placed in "higher" classifications, other lands were placed in "lower" classifications, and the status of about half of the lands proposed for reclassification was undisturbed.[3] Approximately 66,670 acres were reclassified.

Life of the Land and several of its members filed the instant action against the Land Use Commission of the State of Hawaii, its members, and Castle & Cooke, Inc., an affected landowner, on April 24, 1975, seeking a judicial declaration that all of the commission's determinations announced at the conclusion of its comprehensive boundary review were void for sundry reasons.[4] Plaintiffs-appellees alleged, *inter alia,* that violations of HRS Chapter 91 (the Administrative Procedure Act), HRS Chapter 205 (the Land Use Law), and HRS Chapter 343 (environmental impact statements) had vitiated the entire boundary review; they also alleged breaches of federal and state constitutional provisions by the commission. Plaintiffs-appellees further averred the determinations were arbitrary and capricious. The ultimate relief sought is a restoration of the status quo ante in land use classifications and district designations for all of the reclassified lands.

Defendants-appellants promptly moved to dismiss the complaint; plaintiffs-appellees countered with a motion seeking permission to maintain their suit as a class action "against a class comprised of defendant Castle & Cooke, Inc. and all other persons similarly situated, namely, all landowners whose lands were subjected to review and/or reclassification by the Land Use Commission during the Commission's 1974 five-year boundary review." After lengthy and comprehensive legal memoranda were submitted and considered, the circuit court dismissed six counts of plaintiffs-appellees'

---

[3] Under the Land Use Law, lands are designated as belonging in one of four land use districts: urban, rural, agricultural, and conservation. For present purposes we refer to urban as the "highest" classification and conservation as the "lowest," strictly on the basis of the degree of development permitted within a land use district. Land in an urban district tolerates the highest degree of development and conservation land the least.

[4] Although the complaint originally included nine separate counts, only the first three survived defendants-appellants' motion to dismiss. *See* discussion of plaintiffs-appellees' cross-appeal, *infra.*

complaint, but ruled the remaining three counts could be maintained "as a class action under Rule 23(b)(3) of the Hawaii Rules of Civil Procedure against a class comprised of Defendant Castle & Cooke, Inc. and persons whose lands were rezoned as a result of the 1974 Periodic Review. . . ." Following motions for reconsideration filed by both plaintiffs and defendants, the order was amended to indicate the class suit was allowed pursuant to Rule 23(b)(1) and/or Rule 23(b)(2), rather than Rule 23(b)(3).

Upon timely applications, the circuit court allowed interlocutory appeals to this court from both the portion of its order dismissing six counts of the complaint and that part permitting the maintenance of a class action with Castle & Cooke, Inc. as the representative of all property owners whose lands were reclassified. Plaintiffs-appellees, however, have withdrawn their appeal, and the only issues now before us are those raised in defendants-appellants' appeals concerning standing to sue and the maintenance of a defendant class action.

## II.

Defendant-Appellant Land Use Commission initially asserts plaintiffs-appellees have not demonstrated standing to seek judicial relief because they do not aver commission actions have resulted in injury to legally-recognized rights or interests which are personally and peculiarly theirs. The commission further argues plaintiffs-appellees have failed to establish requisite standing because they do not allege harm at the hands of all members of the putative defendant class. However, we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements, and see no sound reason for doing so here.

### A.

Though the courts of Hawaii are not subject to a "cases or controversies" limitation like that imposed upon the federal judiciary by Article III, § 2 of the United States Constitution, we nevertheless believe judicial power to resolve public disputes in a

system of government where there is a separation of powers should be limited to those questions capable of judicial resolution and presented in an adversary context. *Reliable Collection Agency, Ltd. v. Cole,* 59 Haw. 503, 510, 584 P.2d 107, 111 (1978). For "prudential rules" of judicial self-governance "founded in concern about the proper — and properly limited — role of courts in a democratic society" are always of relevant concern. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). *See also Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 221-27 (1974). And even in the absence of constitutional restrictions, courts still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, especially where there may be an intrusion into areas committed to other branches of government. In short, judicial intervention in a dispute is normally contingent upon the presence of a "justiciable" controversy. *See State v. Maxwell,* 62 Haw. 556, 562, 617 P.2d 816, 820 (1980); *Wong v. Board of Regents,* 62 Haw. 391, 394-95, 616 P.2d 201, 203-05 (1980), and cases cited therein; *Schwab v. Ariyoshi,* 58 Haw. 25, 37, 564 P.2d 135, 142-43 (1977); *Territory v. Tam,* 36 Haw. 32, 35, (1942).

Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin, supra,* 422 U.S. at 498-99 (original emphasis). While standing requisites ordinarily comprise one of the "prudential rules" discussed earlier, they may also be tempered, or even prescribed, by legislative and constitutional declarations of policy.[5]

The Land Use Commission's argument speaks of an absence of adequate, legally recognized interests, personal and peculiar to plaintiffs. In some respects it is reminiscent of a view, formerly espoused, that standing depended upon the presence of a "legal right, — one of property, one arising out of contract, one protected

---

[5] *See, e.g.,* HRS Chapter 632, Declaratory Judgments, and Hawaii State Constitution, Article XI, Section 9, Environmental Rights. *See also* Sierra Club v. Morton, 405 U.S. 727, 732 (1972); Fed. Communications Comm'n v. Sanders Brothers Radio Station, 309 U.S. 470, 477 (1940).

against tortious invasion, or one founded on a statute which confers a privilege." *Tennessee Electric Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 137-38 (1939). But the Supreme Court has not adhered to the foregoing principle where challenges to administrative action are involved. "Legal interest" as the standard to determine standing to contest governmental action was expressly rejected in *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153-54 (1970), where the Court concluded the relevant inquiries were whether the plaintiff alleged the challenged action caused him injury in fact and whether the interest for which protection was sought lay within the zone of interests protected or regulated by the statute or constitutional guarantee in question.[6] *Id.* at 152-53.

Although Supreme Court doctrine on this issue does not bind us, we have, on occasion, sought guidance therefrom.[7] And while every

---

[6] The Supreme Court's standing doctrine includes a requirement that there be a showing of a "logical nexus" between the interest asserted and the claim sought to be adjudicated. *See* Flast v. Cohen, 392 U.S. 83, 102 (1968). In Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59 (1978), the Court summarized its doctrine as follows:

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). As refined by subsequent reformulation, this requirement of a "personal stake" has come to be understood to require not only a "distinct and palpable injury," to the plaintiff, *Warth v. Seldin*, 422 U.S. 490, 501 (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977). See also *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973).

438 U.S. at 72. However, it went on to state the requirement of the foregoing nexus was only applicable in taxpayers' suits and "outside the context of . . . [such] suits, a litigant must demonstrate . . . [nothing] more than injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury to satisfy the 'case or controversy' requirement of Art. III." *Id.* at 79.

[7] For example, in Reliable Collection Agency v. Cole, *supra*, we dismissed an alleged cause of action on the strength of federal precedent, stating in part:

> While we are not subject to the "case or controversy" requirement of Article III of the United States Constitution, the prudential considerations which have been suggested in the federal cases on standing persuade us that a party should not be permitted to assume the role and responsibility of a public official to enforce

challenge to governmental action has not been sanctioned, our basic position has been that standing requirements should not be barriers to justice.[8] Moreover, our opinions over the past decade have reflected an awareness of the transition from "legal right" to "injury in fact" as the federal standard in the realm of environmental concerns for judging whether a plaintiff's stake in a dispute is sufficient to invoke judicial intervention. Granting textual dissimilarities, the Hawaii decisions have paralleled, in substance, the evolution of federal doctrine.

*Dalton v. City and County*, 51 Haw. 400, 462 P.2d 199 (1969), involved an attempt to invalidate several zoning ordinances. We concluded that "residing in very close proximity" to a proposed high-rise apartment was sufficient to confer standing to seek a declaratory judgment under HRS § 632-1 on the validity of the ordinances because the building would restrict plaintiffs' view, limit the sense of open space, and increase the population. This, in our opinion, was sufficient to establish a "concrete interest" in a "legal relation" subject to protection. *Id.* at 403, 462 P.2d at 202. In *East Diamond Head Association v. Zoning Board of Appeals, supra,* we concluded an unincorporated neighborhood association and several of its members who owned or resided on land adjoining land subject to a zoning variance were "persons aggrieved" by the issuance of the variance and thus vested with standing to file an appeal from the agency determination pursuant to HRS § 91-14. *Waianae Model*

---

public law without a personal interest which will be measurably affected by the outcome of the case. *Cf. Warth v. Seldin,* 422 U.S. 490 (1975); *Sierra Club v. Morton,* 405 U.S. 727 (1972).
59 Haw. at 510-11, 584 P.2d at 111.

[8] In E. Diamond Head Ass'n v. Zoning Bd. of Appeals, 52 Haw. 518, 479 P.2d 796 (1971), where we held landowners whose land adjoined land subject to a zoning variance were "persons aggrieved" under HRS § 91-14, we said:
    In this case we subscribe to Professor Davis' common sense position on standing requirements:
    "Complexities about standing are barriers to justice; in removing the barriers the emphasis should be on the needs of justice. One whose legitimate interest is in fact injured by illegal action of an agency or officer should have standing because justice requires that such a party should have a chance to show that the action that hurts his interest is illegal." Davis, *The Liberalized Law of Standing,* 37 U. of Chi. L. Rev. 450 (1970) at 473.
52 Haw. at 523 n. 5, 479 P.2d at 799 n. 5.

*Neighborhood Area Association, Inc. v. City and County,* 55 Haw. 40, 514 P.2d 861 (1973), presented the question of whether an association incorporated to promote the general welfare of the area where its members resided and to improve environmental quality and living conditions there had standing to seek a declaration on the validity of a building permit for the construction of an apartment hotel within the area. In our affirmative answer to the foregoing question, we emphasized the plaintiffs' allegations of individualized harm in contrast to the Supreme Court's apparent conclusion that the Sierra Club was only attempting to vindicate "value preferences through the judicial process" in *Sierra Club v. Morton, supra,* 405 U.S. at 740.

*In re Hawaiian Electric Co.,* 56 Haw. 260, 535 P.2d 1102 (1975), involved a challenge mounted by Life of the Land and a member against rate increases approved by the Public Utilities Commission. In upholding their right to appeal the rate determination, we said:

> A ratepayer who is compelled to pay higher utility rates by agency action is a person specially, personally and adversely affected. The fact that he shares this additional burden with all other users does not disentitle him from challenging the results. *Cf. United States v. SCRAP,* 412 U.S. 669 (1973); *Sierra Club v. Morton,* 405 U.S. 7[2]7 (1972).

56 Haw. at 264-65, 535 P.2d at 1105. The expansive trend in defining injury for standing purposes was noted in a footnote to the foregoing citations of *United States v. SCRAP* and *Sierra Club v. Morton,* reading:

> We note that the trend in American jurisprudence as evidenced by recent decisions of this court and courts across the land, has been to broaden the class of persons that have standing to challenge agency action. The United States Supreme Court has clearly indicated that standing cannot be confined only to those who allege economic harm, nor can it be denied to others simply because many persons share the same purported injury. . . .

*Id.* at 256 n. 1, 535 P.2d at 1105-06 n. 1.

*Life of the Land, Inc. v. Land Use Commission, supra,* (the 1979 decision) involved objections to the 1974 boundary review, but on a narrower geographical basis than here. We ruled the organization was a "person aggrieved" for purposes of appeal pursuant to HRS §

91-14. The allegations upon which standing was established there were substantially similar to the averments here.[9] And these allegations were deemed sufficient to establish standing for Life of the Land as "a party specially, personally and adversely affected by the agency action." 61 Haw. at 8, 594 P.2d at 1082. That aesthetic and environmental interests could be important "personal" and "special" interests was also reaffirmed:

> [T]his court has in recent years recognized the importance of aesthetic and environmental interests and has allowed those who show aesthetic and environmental injury standing to sue where their aesthetic and environmental interests are "personal" and "special", or where a property interest is also affected.

*Id.*

There has been an unmistakable parallelism in the substance of our standing decisions involving the particular interests Life of the Land seeks to protect and in the substance of related federal decisions. *See also Duke Power Co. v. Carolina Environmental Study Group, Inc., supra.* While the term "injury in fact" may not appear in their text, our decisions have afforded standing on a basis at least coextensive with federal doctrine where harm to such interests has been alleged. This is not to suggest our standing requisites will follow every twist or turn in the development of federal doctrine. Our touchstone remains "the needs of justice." *See* discussion, *supra* note 8.

Life of the Land and its members have a "stake" in the outcome of the alleged controversy adequate to invoke judicial intervention, even though they are neither owners nor adjoining owners of land

---

[9] Our conclusion that standing had been established was premised on the following finding and allegations:

Appellant has made a prima facie showing that three of its members reside in the immediate vicinity of the Oneula lands, two of whom own their residences, and that the same members live approximately one and one-half to two miles from the Ewa lands. In addition, it is generally contended that members use the area for diving, swimming, hiking, camping, sightseeing, horseback riding, exploring and hunting and for aesthetic, conservational, occupational, professional and academic pursuits, and that future urbanization will destroy beaches and open space now enjoyed by members and decrease agricultural land presently used for the production of needed food supplies. Appellant contends that construction will have an adverse effect on its members and on the environment, and that pursuits presently enjoyed will be irrevocably lost.

61 Haw. at 8, 594 P.2d at 1082.

reclassified by the Land Use Commission in the 1974 boundary review. What the Land Use Commission argues are generalized interests have been previously recognized and pleaded here as personal and special interests or "rights."[10]

## B

Having decided there are personal interests and possible rights subject to judicial protection, we next consider whether the criteria prescribed by the procedural statutes invoked, HRS § 91-7 and HRS § 632-1, have also been satisfied. An examination of the foregoing statutory provisions indicates they present no barriers to adjudication.

HRS § 91-7 authorizes "interested persons" to seek declarations on the validity of agency rules.[11] Life of the Land and its members challenge the legality of the procedures followed by the Land Use Commission in the boundary review. The orders of the commission governing procedural aspects of the review are arguably agency rules.[12] As plaintiffs are endowed with interests that may have been

---

[10] *See* Hawaii State Constitution, Article XI, Section 9, Environmental Rights, reading:

Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

However, the foregoing constitutional provisions were approved by the electorate in 1978, subsequent to the circuit court's decision herein.

[11] HRS § 91-7(a) reads:

Any interested person may obtain a judicial declaration as to the validity of an agency rule as provided in subsection (b) herein by bringing an action against the agency in the circuit court of the county in which petitioner resides or has its principal place of business. The action may be maintained whether or not petitioner has first requested the agency to pass upon the validity of the rule in question.

[12] *See* HRS § 91-1(4) which defines "rule" as "each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency."

However, our statement that the orders in question are arguably agency rules does not represent a conclusion on the issue. We are merely construing the complaint favorably for plaintiffs for purposes of determining standing. *See* Warth v. Seldin, *supra*, 422 U.S. at 501-02.

adversely affected, they undoubtedly are "interested persons." Moreover, plaintiffs were deemed "aggrieved persons" in a prior case with similar allegations (the 1979 Life of the Land decision), and further discussion here relative to their status as "interested persons" would definitely be redundant.

HRS § 632-1 authorizes courts of record to issue declaratory judgments "in cases of actual controversy."[13] Our brief discourse on the "prudential rules" and their application to this case has obviated a necessity for further debate on whether an "actual controversy" exists.

### C.

The Land Use Commission also argues plaintiffs-appellees' neglect to allege harm at the hands of all members of the putative defendant class deprives them of standing to sue. We disagree.

Where the antagonistic interests of plaintiffs-appellees and some landowners, particularly those whose lands were placed in higher classifications, are apparent from the face of the complaint, we believe this argument is largely immaterial. That others may also have been haled into court does not defeat plaintiffs-appellees' standing, so long as the required demonstration of adverse interests or claims has been made. However, an absence of adverse interests on the part of purported defendants is a relevant consideration in a determination of the breadth of the defendant class, a matter we shall discuss hereafter.

### III.

We turn now to the issues raised by the circuit court's ruling that a class action under Rule 23(b)(1) and/or Rule 23(b)(2) of the Hawaii Rules of Civil Procedure may be maintained against a class com-

---

[13] HRS § 632-1 reads in part:

In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided, that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought.

posed of Castle & Cooke, Inc. and all persons whose lands were reclassified. Defendants-appellants argue the facts cannot sustain the certification of a defendant class. They further contend that even if a certification were proper, it should have been pursuant to Rule 23(b)(3). An examination of the record and a consideration of the applicable law lead us to conclude defendants-appellants are essentially correct that the facts do not support the certification.

### A.

"The class action was an invention of equity . . . mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs." *Montgomery Ward & Co. v. Langer,* 168 F.2d 182, 187 (8th Cir. 1948). By Rule 23 of the Hawaii Rules of Civil Procedure, we have extended the permissible use of this procedural device to all civil litigation in the circuit courts of Hawaii.[14] Its pragmatic objectives include economies of time, effort, and expense, as well as uniformity of decision for persons similarly situated. *See* Advisory Committee's Note, 39 F.R.D. 98, 102-03 (1966). But the desirable economies and uniformity are not procurable at the expense of fairness to absentees. *Id.* And a concern for due procedure is as relevant as considerations of convenience, expense, and uniformity in the allowance or disallowance of class actions.

· As Rule 23(a) states one or more members of a class "may sue or be sued . . . on behalf of all," defendant class actions are clearly authorized.[15] Though the rule ostensibly treats them no differently

---

[14] Rule 23, H.R.C.P., is an exactly worded counterpart of Rule 23, Fed. R. Civ. P.

[15] Rule 23(a) reads:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

from plaintiff actions, defendant actions are still relatively uncommon. 1 H. Newberg, *Class Actions* § 1148, at 249-51 (1977). And doubts that they are entirely consistent with precepts of due procedure linger. *See* Wolfson, *Defendant Class Actions*, 38 Ohio St. L. Rev. 459, 460-61 (1977). The distrust appears largely centered on a perceived difficulty of affording absent members of a defendant class adequate representation. Some critics go so far as to contend adequate representation of absent defendants is impossible. *Id.* We do not subscribe to this view; we consider class actions, including defendant actions, viable and valuable procedural instruments in complex litigation where the rights of numerous parties are adjudicated. Nevertheless, we believe defendant class actions "demand greater attention to the due process rights of absent class members," *In re Gap Stores Securities Litigation*, 79 F.R.D. 283, 292 (N.D. Cal. 1978), for a defendant class is more than likely to be represented by a reluctant representative. *See also* Wolfson, *supra*, at 478.

B. ·

A trial court is vested with "broad discretion in deciding whether to certify a class," and discretionary authority is normally undisturbed on review. *Filipo v. Chang*, 62 Haw. 626, 636, 618 P.2d 295, 301 (1980). But where the record discloses a possible misapprehension or misapplication of Rule 23's criteria, it is incumbent upon us to conduct a careful review of the rule's application to the facts involved,[16] especially where questions respecting the adequacy of representation are raised.

The party who seeks to utilize a class action must establish his right to do so, "even if the class sought to be created is a defendant class." *Life of the Land v. Burns*, 59 Haw. 244, 253, 580 P.2d 405, 411 (1978); *accord*, 7 C. Wright & A. Miller, *Federal Practice and Procedure*

---

[16] A widely accepted treatise on civil procedure draws the following distinction between a trial court's failure to apply the law and an abuse of discretion in the context of Rule 23:

> The trial court must apply the Rule's criteria to the facts of the case in determining whether the suit brought as a class action is to be so maintained, and if it fails to do this its determination is reviewable; but where it does apply the criteria to the facts of the case it has broad discretion as to whether the suit may be maintained as a class action, which the appellate court should normally respect.

3B *Moore's Federal Practice* ¶ 23.97, at 23-596 (1980).

§ 1770, at 661 (1972). Plaintiffs-appellees thus assumed a burden of establishing the four prerequisites for class certification delineated in Rule 23(a)[17] and further demonstrating the presence of a suitable situation for the maintenance of a class action under the criteria set forth in at least one of the subdivisions of Rule 23(b).[18] A failure to satisfy the burden in any respect can result in a denial of the necessary certification. *Manning v. Princeton Consumer Discount Co.,* 533 F.2d 102 (3d Cir. 1976), *cert. denied,* 429 U.S. 865 (1976); *Gaffney v. Shell Oil Co.,* 19 Ill. App. 3d 987, 312 N.E.2d 753 (1974).

Rule 23(a)'s subpart (1) provides a class suit is only maintainable where "the class is so numerous that joinder of all members is impracticable." The focal point of inquiry thereunder is "Who Are The Proposed Class," and the specific criteria are that its members be identifiable and their possible joinder impracticable. 3B *Moore's,*

---

[17] *See* note 15 *supra.*

[18] Rule 23(b) reads:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*supra* ¶ 23.06-2, at 23-191. Rule 23(a)'s subpart (2) requires the presence of "questions of law or fact common to the class" for the maintenance of a class action. The inquiry here focuses on "What Are The Claims Or Defenses of The Class," and the pertinent criterion is the presence of common claims or defenses extending throughout the class. *Id.* As the record denotes the proposed defendant class consists of over 150 identifiable members, we see no basis for disturbing the finding of requisite "numerosity" implicit in the circuit court's order. And as the complaint alleges several factual and legal issues of common concern to persons affected by the 1974 boundary review, for example, the validity of Special Order 74-1 issued by the Land Use Commission and the procedure followed with regard to the receipt of "letters of intent" from landowners prior to the review, we also see no basis for overruling the trial court's implicit finding on the existence of common issues or facts.

The third prerequisite embodied in the rule states a class action is maintainable only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The crucial question here is paraphrased in *Moore's* as "What Is The Individual Claim [Or Defense] Of The Class Representative," and the primary requisite is that his claim or defense be essentially similar to the claims or defenses throughout the class. *Id.* Otherwise stated, the presence of coextensive claims or defenses is the criterion. The fourth subpart of the rule provides that a class suit may be maintained only if "the representative parties will fairly and adequately protect the interests of the class." The focus of inquiry here is on "Who Is The Representative" and the pertinent criterion is his capacity to adequately represent the entire class. 3B *Moore's, supra* ¶ 23.06-2, at 23-192.

The meaning and purpose of the "typicality" requirement remain unsettled. "A few courts have equated 'typicality' with the existence of the common questions required by Rule 23(a)(2)." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 829 (8th Cir. 1977), *cert. denied,* 434 U.S. 856 (1977). "More often, courts have equated typicality with the . . . absence of conflict of interest between the representative and class members. . . ." *Id.* This lack of unanimity is not surprising, since the subparts of Rule 23(a) describe four *overlapping* "analytical steps which focus upon sequential sets of concrete facts, relationships and requirements." 3B *Moore's, supra* ¶ 23.06-2, at

23-191. The prerequisite in question, however, appears to bear a greater affinity to adequacy of representation than to commonality, for both the third and fourth prerequisites are primarily structured to assure due process for absentees. We believe the requirement that the representative's claims or defenses be coextensive with those of other class members was designed to be read in conjunction with the fair representation requirement that follows. *Rosado v. Wyman,* 322 F. Supp. 1173, 1193 (E.D.N.Y. 1970), *aff'd,* 437 F.2d 619 (2d Cir. 1970), *aff'd,* 402 U.S. 991 (1971).[19] While there are overtones of due procedure in the commonality test, in our opinion the inquiries generated thereby are more directly concerned with the establishment of predictable economies of time, effort, and expense and uniformity of decision. Reading the third and fourth preconditions together, we too equate "typicality with the absence of conflict of interest."

The fourth predictive finding necessary for a valid class certification, as noted earlier, is one of fair and adequate representation of the entire class. While the adequacy of his counsel is of relevant concern, the representative's ability to speak on behalf of the rest of the class is the more important question here.

Where claims or defenses are coextensive, there is a probability of fair and adequate representation; where they are potentially conflicting, absentees are unlikely to be afforded representation consistent with notions of fairness and justice. *Hansberry v. Lee,* 311 U.S. 32, 44-45 (1940). Our examination of the record leads us to conclude plaintiffs-appellees have not sustained their burden with respect to the third and fourth preconditions delineated in Rule 23(a) for class certification.

---

[19] We find Judge Weinstein's reasoning in this regard persuasive:

Development of Rule 23 suggests that the typical representative element in Rule 23(a)(3) is designed to buttress the fair representation requirement in Rule 23(a)(4). The theory is that if the claims and defenses are typical then there will be every reason for the representatives to support their own claims and so advance the claims of others in a like position. The phrase in original Rule 23, "one or more, as will fairly insure the adequate representation of all," was expanded into clauses (3) and (4) of new Rule 23(a) when it was amended in 1966.
322 F. Supp. at 1193.

## C.

Plaintiffs-appellees were obliged to show an absence of conflict between the interests of Castle & Cooke, Inc. and those of the other members of the putative defendant class, as well as the representative's capacity and propensity to litigate the defenses of other class members in the manner it would litigate its own.

Defendants-appellants' responsive pleadings are yet to be filed; what may be pleaded by way of answer to the complaint is conjectural. But as plaintiffs-appellees seek to have the results of the 1974 boundary review voided in their entirety, the certification imposes a duty upon Castle & Cooke, Inc. to represent every landowner affected thereby, including owners whose lands were "downzoned." In our opinion, its ability to speak on behalf of the broadly based defendant class is extremely doubtful. Even its capacity to adequately represent all landowners whose lands were placed in higher classifications has not been demonstrated. For example, Count III alleges, *inter alia,* that the Commission conducted "various 'workshops' and public hearings in a very arbitrary and capricious manner." The record does not disclose Castle & Cooke Inc.'s presence throughout the relevant proceedings, and whether it can speak on behalf of all landowners whose proposals were favorably considered has not been established.

Where colorable defenses may derive from particular circumstances, rather than from those common to the putative defendant class, a class certification is improper. *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir. 1974), *cert. denied,* 421 U.S. 963 (1975). And "[w]here there is indication that the representative may be particularly interested in a claim or defense unique to him or a subclass, the court is justified in denying class action certification on the grounds of inadequate representation." *Mudd v. Busse,* 68 F.R.D. 522, 529 (N.D. Ind. 1975), *dismissed on other grounds,* 437 F. Supp. 505 (N.D. Ind. 1977); *accord, United States v. South Carolina,* 445 F. Supp. 1094 (D.S.C. 1978), *aff'd,* 434 U.S. 1026 (1978); *see Dierks v. Thompson,* 414 F.2d 453, 456 (1st Cir. 1969); *cf. Hopson v. Schilling,* 418 F. Supp. 1223, 1238-39 (N.D. Ind. 1976) (defendant class of township trustees certified only for purposes of determining the facial validity of a state statute, not its application).

While a proper limitation of the issues to be tried and a subsequent division of the defendant class pursuant to Rule 23(c)(4) into adequately represented subclasses may possibly cure the objection that the certified class is improperly composed of defendants with conflicting interests, we are unable to make this determination. The record reveals the certification was issued primarily on the basis of the complaint, without an evidentiary hearing of even a preliminary nature. And the facts therein do not sustain the certification of a defendant class composed of "Castle & Cooke, Inc. and persons whose lands were rezoned as a result of the 1974 Periodic Review of District Boundaries conducted by the Land Use Commission of the State of Hawaii."

### D.

We do not reach the question of whether the action was more properly maintainable under Rule 23(b)(1) and/or 23(b)(2) or whether the certification should have been pursuant to Rule 23(b)(3).

The order certifying the defendant class is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*Benjamin M. Matsubara,* Special Deputy Attorney General (*Gary B. K. T. Lee* with him on opening brief) for defendants-appellants Land Use Commission, et al.

*Dickson C. H. Lee (Ton Seek Pai and Robert M. Ehrhorn, Jr.,* with him on the briefs; *Okumura, Takushi, Funaki & Wee* of counsel) for defendant-appellant Castle & Cooke, Inc.

*Edward Cooper Brown* for plaintiffs-appellees.