**Electronically Filed**
**Supreme Court**
**SCEC-24-0000797**
**20-DEC-2024**
**02:45 PM**
**Dkt. 43 FFCL**

SCEC-24-0000797

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

_____

RALPH S. CUSHNIE and more than THIRTY VOTERS, Plaintiffs,

vs.

SCOTT NAGO, as Chief Elections Officer for the Office of Elections, State of Hawaiʻi; and JADE FOUNTAIN-TANIGAWA, County Clerk for the County of Kauaʻi, Defendants.

_____

ORIGINAL PROCEEDING

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT
(By: Recktenwald, C.J., McKenna, Eddins, Ginoza, and Devens, JJ.)

This 2024 General Election contest is about overages. An overage occurs when the amount of ballots recorded in the official election results is more than what "documented usage" indicates.

Plaintiffs Ralph Cushnie (Cushnie) and thirty-two other voters (collectively, Plaintiffs) assert there is an overage in mail ballots that are sufficient in quantity to cause a difference in the results of the Kauaʻi County Councilmember race in the 2024 General Election.

However, the data that Plaintiffs rely on for "documented usage" contains a disclaimer that expressly states that the figures represent a manual count of <u>envelopes</u> and not the number of <u>ballots</u> counted.  It is unreasonable to infer a ballot count from this data due to this disclaimer.

Plaintiffs' December 12, 2024 Memorandum in Support also concedes that there is a difference of only 39 ballots when comparing Plaintiffs' 27,036 envelope amount that was transferred to the state counting center and the 27,075 total mail ballots from the official results of the 2024 General Election in Kaua'i County.  This 39 ballot difference is less than the 108 vote difference between the seventh place and eighth place candidates in the 2024 General Election race for Kaua'i County Councilmember.

We thus enter the following findings, conclusions, and Judgment in favor of the State and County, and against Plaintiffs.  We also deny Plaintiffs' motion for interrogatories.

## I.  FINDINGS OF FACT

According to the final printout, the 2024 General Election results for the Kaua'i County Councilmember race were:

| | | | |
|---|---|---|---|
| 1. | CARVALHO, Bernard P., Jr. | 15,435 | 7.2% |
| 2. | RAPOZO, Mel | 14,403 | 6.7% |
| 3. | KANESHIRO, Arryl J. | 13,049 | 6.1% |

2

| | | |
|---|---|---|
| 4. BULOSAN, Addison | 12,385 | 5.8% |
| 5. COWDEN, Felicia | 12,325 | 5.8% |
| 6. KUALII, KipuKai | 12,276 | 5.7% |
| 7. HOLLAND, Fern Anuenue | 12,041 | 5.6% |
| KAGAWA, Ross | 11,933 | 5.6% |
| DECOSTA, Billy D. | 9,977 | 4.7% |
| APILADO, Abe, Jr. (Aba-G) | 5,964 | 2.8% |
| KEAHIOLALO, W. Butch | 5,202 | 2.4% |
| CUMMINGS, Sherri | 4,160 | 1.9% |
| NELSON, Jacquelyn (Jakki) | 3,386 | 1.6% |
| THOMAS, Bart | 3,296 | 1.5% |
| Blank Votes: | 77,696 | 36.4% |
| Over Votes: | 62 | 0.0% |

A voter may vote for up to seven candidates in this race. Numbers are added to the above results to clearly identify the top seven candidates.

There is a 108 vote difference between the seventh-place candidate (Fern Anuenue Holland) and eighth place candidate (Ross Kagawa).

There were a total 27,075 mail ballots that were recorded in the final printout of the official 2024 General Election results for Kaua'i County.

On November 25, 2024, Plaintiffs filed an Election Complaint (Complaint) asserting there is an "overage of 3,772 voted ballots" that caused a difference in the 2024 General Election results for the Kaua'i County Councilmember race. Plaintiffs assert that a correct result cannot be determined for

3

this election "due to the provable overage," and this court's Judgment should invalidate the results of the Kaua'i County Councilmember race.

Plaintiffs submitted an information request under the Uniform Information Practices Act to the Kaua'i County Elections Division for chain-of-custody documentation relating to ballot collections and handling for the 2024 General Election.

Based on the information provided by County, Plaintiffs assert that the "documented usage for voted ballot envelopes was recorded as 23,303, and is the total number of voted ballots submitted by mail for the county." Plaintiffs assert their 23,303 number constitutes the "documented usage" for purposes of calculating an overage of mail ballots pursuant to Hawai'i Revised Statutes (HRS) § 11-153(a) (Supps. 2019 & 2021), Hawai'i Administrative Rules (HAR) § 3-177-750 (eff. 2020), and HAR § 3-177-769(b) (eff. 2020).

The documents attached to the Complaint that support Plaintiffs' 23,303 number all contain the following "Disclaimer" at the bottom of each page:

> Figures on this form represent a manual count of envelopes - not the number of ballots counted. The manual counts were made for internal purposes to track election progress with the understanding that it would not match official election results.

Subtracting Plaintiffs' 23,303 figure from the total 27,075 mail ballots in Kaua'i County results in an overage of 3,772 mail

4

ballots. Plaintiffs assert that this 3,772 overage amount "cause[d] a difference in the election results for the county council race for the County of Kauai" because the "overage of 3,772 voted ballots exceeds the reported margin between candidates for the top nine candidates" in the Kaua'i County Councilmember race.

Plaintiffs' Complaint was signed by Cushnie and includes the signatures of Cushnie and thirty-two other voters from "Kauai District 17" under the following affirmation:

> I am one of more than thirty voters from Kauai District 17 and am filing this election complaint pursuant to the Constitution for the State of Hawaii and Hawaii Revised Statutes for redress of grievances regarding the 2024 Hawaii General Election and as per the accompanying filing.

Motions to dismiss or for summary judgment were filed by Defendant Jade Fountain-Tanigawa, County Clerk for the County of Kaua'i (County), on December 4, 2024, and Defendant Scott Nago, Chief Elections Officer for the Office of Elections (the State or Nago), on December 5, 2024.

County's motion asserts that the data that Plaintiffs used to calculate the 3,772 overage ballot amount is wrong because Plaintiffs' data is based on ballot envelopes rather than ballots themselves, and the County "forms capturing ballot envelope counts are not used to calculate overages and underages pursuant to HRS § 11-153." Pointing to the Disclaimer at the

5

bottom of the County forms, County states that its forms capturing ballot envelope counts are used by County to

> approximate the quantity of ballot envelopes collected and the quantity still outstanding and was meant to aide with projecting staffing needs and scheduling of staff overtime, with the understanding that the envelope counts would not equal the quantity of ballots counted and reported in official election results.

County also asserts that Plaintiffs miscalculated the ballot envelope amount due to missing data, and provided the missing data through Exhibit A to County's motion.

The State's motion to dismiss or for summary judgment asserts: (A) the Complaint should be dismissed for lack of standing pursuant to Cordery v. Ige, SCEC-22-0000734, because Cushnie is the only Plaintiff, or voter, in this election contest; (B) Plaintiffs disregard the disclaimer language on the County forms they rely on; (C) Plaintiffs also disregard return identification envelopes data that is also attached to their Complaint showing that 26,954 return identification envelopes were transferred to counting centers between October 26, 2024 and November 6, 2024; and (D) the State's data shows there are a total of 25 overage mail ballots in Kaua'i County, and this 25 overage mail ballots is not enough to cause a difference in the results of the 2024 General Election race for Kaua'i County Councilmember because the difference in votes between the seventh-place candidate and eighth-place candidate is 108 votes.

6

The State's 25 overage mail ballots is reflected by the following table:

| D/P | Mail | | | | In-Person | | | |
|---|---|---|---|---|---|---|---|---|
| | Adj. Mail Turnout | Prec. Report | Over (+) | Under (-) | Walk Turnout | Prec. Report | Over (+) | Under (-) |
| 15-01 | 1,761 | 1,763 | 2 | 0 | 167 | 170 | 3 | 0 |
| 15-02 | 1,708 | 1,713 | 5 | 0 | 209 | 209 | 0 | 0 |
| 15-03 | 938 | 940 | 2 | 0 | 138 | 138 | 0 | 0 |
| 15-04 | 3,456 | 3,458 | 2 | 0 | 537 | 537 | 0 | 0 |
| 15-05 | 1,207 | 1,208 | 1 | 0 | 151 | 152 | 1 | 0 |
| 16-01 | 2,875 | 2,877 | 2 | 0 | 468 | 469 | 1 | 0 |
| 16-02 | 1,172 | 1,173 | 1 | 0 | 195 | 195 | 0 | 0 |
| 16-03 | 1,997 | 1,999 | 2 | 0 | 271 | 271 | 0 | 0 |
| 16-04 | 2,505 | 2,506 | 1 | 0 | 345 | 344 | 0 | (1) |
| 16-05 | 304 | 304 | 0 | 0 | 40 | 37 | 0 | (3) |
| 17-01 | 2,290 | 2,294 | 4 | 0 | 285 | 288 | 3 | 0 |
| 17-02 | 2,954 | 2,954 | 0 | 0 | 367 | 368 | 1 | 0 |
| 17-03 | 1,929 | 1,929 | 0 | 0 | 154 | 155 | 1 | 0 |
| 17-04 | 755 | 756 | 1 | 0 | 57 | 57 | 0 | 0 |
| 17-05 | 1,176 | 1,178 | 2 | 0 | 100 | 101 | 1 | 0 |
| 17-06 | 23 | 23 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 27,050 | 27,075 | 25 | 0 | 3,484 | 3,491 | 11 | 4 |

The State's documented usage for mail ballots adds the amount of mail ballots with the amount of electronic ballots, and then reduces the sum by the amount of invalidated mail and electronic ballots. In other words: mail ballots + electronic ballots – invalidated mail and electronic ballots = documented usage.

Overage and underage is calculated on a precinct-by-precinct basis by comparing the documented usage (Adj. Mail Turnout in the above table) with the amount of precinct turnout for mail ballots (Prec. Report in the table).

Nago's Declaration states that the envelopes remain sealed and are not opened until the envelopes are transferred to a state-operated counting center. The envelopes are then opened at the state-operated counting center.

7

Plaintiffs filed an opposition to County's motion on December 5, 2024, and an opposition to the State's motion on December 9, 2024.

Plaintiffs' opposition to County's motion:  (A) asserts Exhibit A of County's motion is unreliable as evidence because "chain of custody has been broken for the handling of 3,004 voted ballot envelopes reportedly received by the county from the US Postal Service and the validity of this new entry cannot be verified"; (B) continues to assert that "documented usage" is calculated by using the ballot envelope count in the County-provided forms with the Disclaimer; and (C) asserts there is an overage of 442 ballots rather than the 3,772 ballots asserted in their Complaint based on Exhibit A of County's motion.

Each page of Exhibit A of County's motion includes the same Disclaimer quoted above.

Plaintiffs' opposition to the State's motion:  (A) attaches a list of addresses for the thirty-three voters in this general election contest; (B) asserts that the State has "frustrated all efforts to retrieve chain of custody documentation"; (C) continues to assert that Kaua'i County chain-of-custody documentation is the only physical verification of the quantity of mail in ballots collected and, based on Kaua'i County data, there is an overage of 442 mail ballots.

On December 4, 2024, Plaintiffs filed a motion for interrogatories that seeks answers to questions concerning certification of Councilmembers prior to the resolution of this election contest. According to Plaintiffs, the 2024 Kaua'i County Councilmember election is a contested election and cannot yet be certified.

Additional arguments were filed by County and Plaintiffs on December 9, 2024.

On December 10, 2024, Plaintiffs filed a "Memorandum in Support of Opposition to Motion to Dismiss/Summary Judgment Pursuant to HRCP Rule 7." Plaintiffs state that County informed them there were 219 uncured envelopes in the 2024 General Election, and assert that the 219 uncured envelopes constitute 219 more overage ballots that could have caused a difference in the Kaua'i County Councilmember race in the 2024 General Election.

On December 12, 2024, Plaintiffs filed a second Memorandum in Support that again asserts the 661 overage mail ballots based on the County forms, the uncured envelopes, and now Nago's "attestation to ballots transferred, and the States Summary Report for the County of Kauai." Notably, Plaintiffs' December 12 Memorandum now says that a total of 27,036 envelopes were transferred from County to the State counting center.

## II. CONCLUSIONS OF LAW

### A.   Standing

When asked to decide whether a litigant is asserting legally recognized interests, personal and peculiar to that person, "we have spoken of standing[.]"  Tax Found. of Hawaiʻi v. State, 144 Hawaiʻi 175, 191, 439 P.3d 127, 143 (2019).

> Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated.  And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of . . . (the court's) jurisdiction and to justify exercise of the court's remedial powers on his behalf."

Life of the Land v. Land Use Comm'n, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (quoting Warth v. Seldin, 422 U.S. 490, 498-99 (1975)).

Standing requirements may be tempered or prescribed by legislative declarations policy.  Tax Found., 144 Hawaiʻi at 191, 439 P.3d at 143.  HRS § 11-172 (Supp. 2021) states that an election complaint may be brought by "any thirty voters of any election district."

Plaintiffs' Complaint was signed by thirty-three voters, one of whom is Cushnie.  Phone numbers and addresses of the thirty-three voters were also provided in the record.

The signature pages in the Complaint include the following affirmation:

> I am one of more than thirty voters from Kauaʻi District 17 and am filing this election complaint pursuant to the Constitution for the State of Hawaii and Hawaii Revised Statutes for redress of grievances regarding the 2024 Hawaii General Election and as per the accompanying filing.

Based on this record, Plaintiffs have satisfied the standing required by Cordery.

**B. Summary Judgment**

When reviewing a request to dismiss a complaint, the court's review "is based on the contents of the complaint, the allegations of which [the court] accept[s] as true and construe[s] in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Casumpang v. ILWU, Local 142, 94 Hawaiʻi 330, 337, 13 P.3d 1235, 1242 (2000) (quotation marks and citation omitted).

The court's consideration of matters outside the pleadings converts a motion to dismiss into one for summary judgment. Foytik v. Chandler, 88 Hawaiʻi 307, 313, 966 P.2d 619, 625 (1998).

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Estate of Doe v. Paul Revere Ins. Group, 86 Hawaiʻi 262, 269-70, 948 P.2d 1103, 1110-11 (1997).

11

A fact is material if proof of that fact would have the effect of establishing or refuting an essential element of a cause of action asserted by one of the parties.  Winfrey v. GGP Ala Moana LLC, 130 Hawai'i 262, 271, 308 P.3d 891, 900 (2013).

On a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. State ex rel. Shikada v. Bristol-Myers Squibb Co., 152 Hawai'i 418, 442, 526 P.3d 395, 419 (2023).

However, this "court is permitted to draw only those inferences of which the evidence is reasonably susceptible and it may not resort to speculation."  Winfrey, 130 Hawai'i at 271, 308 P.3d at 900 (quoting Pioneer Mill Co. v. Dow, 90 Hawai'i 289, 295, 978 P.2d 727, 733 (1999)).

Pursuant to HRS § 11-174.5(b) (Supp. 2021), this court's Judgment may invalidate the general election contest for Kaua'i County Councilmember "on the grounds that a correct result cannot be ascertained because of a mistake or fraud on the part of the voter service center officials; or decide that a certain candidate, or certain candidates, received a majority or plurality of votes cast and were elected."

An election complaint may allege an overage that could cause a difference in the election results of a race.  See HRS § 11-172.

12

Plaintiffs' Complaint states a claim under HRS § 11-172 because Plaintiffs assert there is a mail ballot overage of 3,772 ballots that could cause a difference in the 2024 General Election results for Kaua'i County Councilmember.  Plaintiffs later asserted there is an overage of 442 mail ballots using updated data provided by County, and then 661 mail ballots when adding uncured envelopes.

"Overage" and "underage" are defined by HRS § 11-153 (Supps. 2019 & 2021), which states in its entirety:

> (a) <u>If there are more ballots than documented usage indicates, this shall be an overage and if fewer ballots, it shall be an underage</u>.  The election officials or counting center employees responsible for the tabulation of ballots shall make a note of this fact on a form to be provided by the chief election officer.  The form recording the overage or underage shall be sent directly to the chief election officer or the clerk in county elections separate and apart from the other election records.
>
> (b) If the electronic voting system is being used in an election, the overage or underage shall be recorded after the tabulation of the ballots.  In an election using the paper ballot voting system, the chief election officer or the chief election officer's designee shall proceed to count the votes cast for each candidate or on a question after recording the overage or underage.
>
> (c) The chief election officer or the clerk shall make a list of all precincts in which an overage or underage occurred and the amount of the overage or underage.  This list shall be filed and kept as a public record in the office of the chief election officer or the clerk in county elections.
>
> An election contest may be brought under part XI, if the overage or underage in any precinct could affect the outcome of an election.

(Emphasis added.)

13

Overage and underage are also defined in HAR § 3-177-750, which states:

> §3-177-750 <u>Electronic voting systems;
> documentation of overages and underages; records.</u>
> The voted ballots shall be kept secure and handled
> only in the presence of representatives not of the
> same political party or official observers. <u>If there
> are more ballots than documented usage indicates,
> this shall be an overage and if fewer ballots, it
> shall be an underage.</u> Any overages or underages in
> any district shall be documented. The list of any
> such overages or underages shall be filed and kept as
> a public record in the office of the chief election
> officer or the clerk in county elections. After all
> ballots have been tabulated, they shall be sealed in
> containers.

(Emphasis added.)

Additionally, HAR § 3-177-769 states:

> §3-177-769 <u>Reconciliation of voted ballots.</u>
> (a) The clerk shall prepare a reconciliation of voted
> mail and voter service center ballots recorded on a
> form prescribed by the chief election officer. The
> form shall summarize the following totals by
> precinct:
>
> > (1) Walk-in voter service center ballots;
> >
> > (2) Valid mail return identification
> > envelopes; and
> >
> > (3) Invalidated mail ballots.
>
> (b) <u>If there are more ballots than documented
> usage indicates, this shall be an overage and if
> fewer ballots, it shall be an underage</u>.

(Emphasis added.)

Reading "documented usage" in context with the plain language of the above statutes and administrative rules shows that "documented usage" refers to ballots ("[i]f there are more ballots than documented usage indicates") and not ballot envelopes. See Tax Found., 144 Hawaiʻi at 193, 439 P.3d at 145

14

(stating that, when construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself, and we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose).

With that in mind, Plaintiffs' reliance on the data used to calculate their 3,772 or 442 overage mail ballot amount is unavailing because Plaintiffs disregard the "Disclaimer" at the bottom of each page of the data they use. This "Disclaimer" appears on the County forms and expressly states that "[f]igures on this form represent a manual count of <u>envelopes</u> - not the number of <u>ballots</u> counted." (Emphases added.)

The Declaration attached to County's motion explained that this data is used for County's internal staffing needs. This data is not used to calculate overages and underages pursuant to HRS § 11-153.

Moreover, Nago's Declaration states that the envelopes remain sealed and are not opened until the envelopes are transferred to a state-operated counting center. The envelopes are then opened at the state-operated counting center.

It is thus unreasonable to infer an amount of overage ballots from these County forms. See <u>Winfrey</u>, 130 Hawaiʻi at 271, 308 P.3d at 900 (observing that this court is permitted to

15

draw only those inferences of which the evidence is reasonably susceptible and it may not resort to speculation).

HRS § 11-96 (2009), which Plaintiffs rely on, states:

> Every record made pursuant to law by a board of registration of voters, or the precinct officials, shall be a prima facie evidence of the facts therein set forth, and shall be received as such in any court or tribunal in which the same is offered in evidence.

Even if HRS § 11-96 applies to the County forms, the County forms are prima facie evidence of the amount of <u>envelopes</u>. The County forms do not constitute prima facie evidence of the amount of <u>ballots</u> due to the Disclaimer appearing on those forms. <u>See</u> HRS § 11-96.

Plaintiffs' reliance on HRS § 11-104(d) (Supp. 2023) is similarly unavailing. HRS § 11-104(d) states: "Once a voter has returned a return identification envelope containing the secrecy envelope or secrecy sleeve <u>with the marked ballot</u>, that voter's ballot shall be deemed cast and may not be recast in the election." (Emphasis added.)

Even if the amount of envelopes recorded on the County forms were construed to be the amount of return identification envelopes, the County forms do not reflect whether those return identification envelopes contained a secrecy envelope or sleeve "with the marked ballot," <u>see</u> HRS § 11-104(d), because the disclaimer on the County forms expressly states that the County forms do not represent "the number of ballots counted."

16

Moreover, even if these County forms are prima facie evidence of ballots notwithstanding the Disclaimer, Plaintiffs' assertion that there is an overage amount that could have caused a difference in the election results is belied by Plaintiffs' December 12, 2024 Memorandum in Support that states there were 27,036 envelopes transferred from County to the State counting center. The difference between 27,075 ballots and 27,036 envelopes is 39, which is clearly less than the 108 vote difference between the seventh-place candidate (Fern Anuenue Holland) and eighth-place candidate (Ross Kagawa) in the 2024 General Election for Kaua'i County Councilmember.

According to the State's data, for all Kaua'i County precincts, there is a total of 25 overage mail ballots. The State's data confirms that the amount of overage for mail ballots will not cause a difference in the results of the Kaua'i County Councilmember race.

Even when viewing the evidence in a light most favorable to Plaintiffs, there is no genuine issue of material fact of an overage that could cause a difference in the 2024 General Election results for Kaua'i County Councilmember. See HRS § 11-172.

C.   **Plaintiffs' Memoranda in Support**

Plaintiffs' December 10 and 12, 2024 Memoranda in Support is an attempt to amend its Complaint. Rather than rely only on

17

the County forms to assert that an overage exists, Plaintiffs now seek to rely on an email to assert there are 219 uncured envelopes in addition to the ballot envelope figures provided by the County forms. In doing so, Plaintiffs make no discernable argument explaining why the uncured ballots should be counted as an overage ballot.

Plaintiffs attached an email string to their December 10 Memorandum in Support with emails dated December 9, 2024. One of these emails appears to be from the Kaua'i County Elections Division and states: "The final number of uncured envelopes is 219 for the 2024 General election."

But the final number of uncured envelopes in Kaua'i County could have been discovered earlier, before the November 25, 2024 deadline to file a general election contest. See HRS § 11-106 (Supp. 2023) (stating in part that a voter "shall have five business days after the date of the election to cure the deficiency").

The General Election occurred on November 5, 2024. Plaintiffs' Complaint was filed on November 25, 2024. Rather than include the 219 uncured envelope argument in the Complaint, the Complaint instead states: "The records do not show that any number of voted ballot envelopes were separated for curing and not forwarded to the state counting center from the county."

18

County and the State filed their responses to the Complaint on December 4 and 5, 2024, respectively. Plaintiffs did not file a Memorandum in Support until December 10, 2024, or after County and State filed their responses to the Complaint.

"All pleadings in applications for writs or other relief, filed originally in the supreme court, shall conform to the requirements of Hawaiʻi Rules of Civil Procedure 7 through 15." Hawaiʻi Rules of Appellate Procedure Rule 16 (eff. 2000).

Rule 15(a)(1) of the Hawaiʻi Rules of Civil Procedure (HRCP) states that a party "may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]" Otherwise, "[i]n all other cases, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." HRCP Rule 15(a)(2) (eff. 2012).

In civil lawsuits, this court applied HRCP Rule 15(a)(2) in a manner that "leave to amend a complaint shall be freely given and . . . undue delay alone is an insufficient basis for denying leave to amend a complaint." Carvalho v. AIG Hawaiʻi Ins. Co., Inc., 150 Hawaiʻi 381, 387, 502 P.3d 482, 488 (2022).

But this isn't an ordinary civil lawsuit. This is an election contest. This court must hear the general election complaint "as soon as it reasonably may be heard." HRS § 11-174.5(b) (Supp. 2021). In a primary election contest, this

19

court's decision must be issued within <u>four days</u> after the defendant's answer to the complaint is filed.  See HRS § 11-173.5(b) (2009).

And the defendants are mandated with answering a complaint within ten days after service of the summons in a general election contest.  HRS § 11-174.5(a) (2009).  The defendants have five days after service of the summons to answer a primary election complaint.  HRS § 11-173.5(a) (Supp. 2019) & Act 1 (March 5, 2024) (to be codified at HRS § 11-173.5(a)) (deleting language concerning primary election contests arising from a mandatory recount).

The election statutes are framed in a manner that mandates a quick resolution of each general and primary election complaint that is brought before this court.  <u>See</u> HRS §§ 11-173.5, 11-174.5.  As Plaintiffs themselves point out in their Motion for Interrogatories, certification of the results of a general election race is delayed due to a general election contest.  <u>See</u> HRS § 11-174.5(b) (discussing the options that this court's Judgment may do to a general election); <u>see also</u> HRS § 11-155 (Supp. 2022) (certification).

Allowing amendments to an election complaint to be freely given under HRCP Rule 15(a)(2) is inconsistent with the quick decisions that this court is mandated to make on general and primary election complaints under HRS §§ 11-173.5 and 11-174.5,

20

and further delaying election certification due to an amended election complaint does not benefit the public's interest.  We thus deny Plaintiffs' attempt to amend their Complaint through their December 10 and 12 Memoranda in Support.

**D.   Motion for Interrogatories**

As for Plaintiffs' motion for interrogatories, an election contest is not intended to be used to delay certification of an election and thereafter raise issues concerning acts that may have been taken prior to certification.  See HRS § 11-172 (concerning the basis of an election complaint).

Nor is an election contest intended to be used as a discovery device concerning the consequences of a delayed certification.  See id.

Plaintiffs' motion for interrogatories is denied.

JUDGMENT

Based on the foregoing findings of fact and conclusions of law, Judgment is entered in favor of the State and County, and against Plaintiffs.

DATED:  Honolulu, Hawaiʻi, December 20, 2024.

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens



21