**IRVIN E. SCHERMER TRUST, by Jerome E. KLINE, Trustee, and Irvin E. Schermer and all other persons similarly situated, Plaintiffs,**

v.

**SUN EQUITIES CORPORATION, Citrus County Land Bureau, Inc., Sussex Group, Inc., Natalie I. Koether, and Paul O. Koether Defendants.**

Civ. No. 4–86–122.

United States District Court,
D. Minnesota,
Fourth Division.

June 25, 1987.

**334**

Daniel W. Schermer, James Wm. Hunter, Schermer, Altman & Izek, Minneapolis, Minn., for plaintiffs.

Robert E. Woods, Briggs and Morgan, St. Paul, Minn., Koether, Harris & Hoffman, New York City, of council, for defendants.

J. Marquis Eastwood, Dorsey & Whitney, Minneapolis, Minn., Stephen C. Sandels, McDermott, Will & Emery, Chicago, Ill., of counsel, for Patrick Industries, Inc.

## MEMORANDUM OPINION AND ORDER

DOTY, District Judge.

## MEMORANDUM

This matter comes before the court upon the plaintiffs' motion for an order pursuant to Fed.R.Civ.P. 23 certifying this action as a class action. Defendants oppose this motion.

## FACTS

According to the complaint, in April 1985, defendants began accumulating stock in Patrick Industries, Inc. (Patrick) through open market purchases. By May 1985 Sun Equities Corporation (Sun) had acquired 30,300 shares and Citrus County Land Bureau, Inc. (Citrus) had acquired 174,700 shares for a total accumulation of 205,000 Patrick shares. Defendants subsequently filed a Schedule 13D with the Securities and Exchange Commission relating to the purchase of 173,500 Patrick shares, stating, among other things, that they might seek control of Patrick through a tender offer or, alternatively, sell their shares to Patrick in privately negotiated transactions. In an amendment to Schedule 13D, defendants stated that neither Sun nor Citrus would accept any offer by Patrick to purchase shares owned by the defendants unless a similar offer was made to all other Patrick shareholders.

On June 4, 1985, the defendants issued a news release announcing that Sun would make an offer to purchase all shares of Patrick for $11.25 per share provided an anti-takeover proposal was withdrawn and provided that at least 1,100,000 shares were tendered. In the news release the defendants also reiterated their promise not to sell their own 205,000 shares back to Patrick unless the price per share was made available to all shareholders. This same promise was later restated in a letter mailed to Patrick shareholders. While the tender offer was outstanding, Sun and Patrick were negotiating an agreement to settle litigation between themselves. Under the agreement, Patrick purchased 133,250 shares of Patrick stock held by defendants at $11.50 per share and paid an additional $650,000 to Sun as a reimbursement for their expenses associated with the settlement. Patrick then offered to purchase up to 850,000 of its shares from the remaining shareholders at $11.50 per share. The complaint asserts that the extra $650,000 (or $4 per share above the $11.50 price) paid to the defendants was not actually for expenses but was an additional payment for the tendered shares. The plaintiffs contend, therefore, that the defendants have wrongfully denied them the additional $4 per share paid to the defendants.

Pursuant to the defendants' tender offer, the plaintiff, Irvin E. Schermer directed his stockbroker to tender 200 shares of Patrick stock to the defendants. Several weeks later, the plaintiff, Irvin E. Schermer Trust, tendered 200 shares of Patrick stock to the defendants pursuant to the defendants' tender offer. The plaintiffs now seek to bring this action as a class action with the general class defined as all shareholders of Patrick stock. They further seek to have the general class divided into three subclasses. Subclass I is defined as those Patrick shareholders who deposited shares pursuant to the Sun tender offer, but did not deposit under the Patrick offer. Subclass II is defined as those Patrick shareholders who deposited under the Patrick offer. Subclass III consists of all Patrick shareholders not participating in either tender offer.

## DISCUSSION

In order to maintain a class action, plaintiffs must first demonstrate compliance with the explicit and implicit requirements of Fed.R.Civ.P. 23. The burden of establishing that all requirements have been satisfied is on the party seeking certification of the class. *See, e.g., Bishop v. Committee on Professional Ethics and Conduct of the Iowa State Bar Association,* 686 F.2d 1278, 1288 (8th Cir.1982). Further, if the general class has been divided into subclasses, the movant must also demonstrate that each of the proposed subclasses meets each of the mandatory requirements. *Mendoza v. Tuscon School District,* 623 F.2d 1338, 1349 (9th Cir.1980).

Prior to the consideration of the explicit requirements set forth under Rule 23(a), the Court must find that two implicit requirements have been met. First, the Court must find the existence of a precisely defined class. This determination is a question of fact that must be determined on the basis of the circumstances of each case. *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976). Second, the Court must find that the class representatives are members of the proposed class. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977).

The explicit requirements of Rule 23(a) permit one or more members of a class to sue or be sued as representative parties only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

If the prerequisites of Rule 23(a) are met, plaintiff additionally bears the burden of meeting the requirements of at least one of the three subsections of Rule 23(b). Plaintiff here seeks certification of the proposed class and subclasses under Rule 23(b)(3) which requires the court to find that:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In this case, the defendants have not challenged plaintiff's ability to meet the implicit requirements of 23(a) or the additional requirements of 23(b)(3). They have, however, argued that plaintiffs' have failed to meet their burden with regard to each of the explicit requirements of Rule 23(a). Therefore, defendants contend that certification of the proposed class and subclasses should be denied.

### A. Implicit Criteria

In the present action, the plaintiffs have precisely defined the class and subclasses they seek to represent. Based upon the allegations of the Amended Complaint or the law of the case as set forth in Judge Magnuson's Memorandum and Order denying the defendants' motion to dismiss the Williams Act count, the Court has determined that a properly certified class may not include Patrick shareholders who tendered their shares pursuant to the Patrick tender offer, or did not tender their shares at all. A court has discretion to redefine a proposed class to bring the action within the requirements of Rule 23. *Slaughter v. Levine,* 598 F.Supp. 1035, 1041 (D.Minn.1984). This court in denying the defendants' motion to dismiss the Williams Act count concluded that the plaintiffs had sufficiently plead reliance upon the defendants' alleged misrepresentations in their decision to tender Patrick shares pursuant to the Sun tender offer. Thus, the only proper class within the alle-

gations of the Amended Complaint and the law of the case is that consisting of Patrick shareholders who tendered their shares in justifiable reliance upon the defendants' representations made during the course of the Sun tender offer.

## B. Explicit Criteria

### 1. Numerosity—23(a)(1)

Rule 23(a)(1) permits a class action only when "the class is so numerous that joinder of all class members is impracticable." The decision as to whether joinder is impracticable is essentially a subjective determination based on expediency and the inconvenience of trying individual suits. Several factors are relevant to the determination of whether the requirement of Rule 23(a)(1) has been met. The most obvious factor is the size of the proposed class itself. No definite standard exists as to what size class satisfies the requirement of Rule 23(a)(1). 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1762, at 169 (1986). Courts have, however, certified classes containing as few as 25 members, *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968). Another factor that has been important in securities fraud cases is the size of the individual claims. Often the size of many of the individual claims is so small that, without class certification, many plaintiffs may elect not to pursue an action individually. *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 131 (D.Minn.1985).

In the present case, the plaintiffs have alleged that there are 1600 class members. They have not, however, been able to identify the subclass in which each of the 1600 members would be included. Although the plaintiffs need not show the exact number of potential plaintiffs in each subclass, mere speculation as to the size of the class is insufficient to satisfy the numerosity requirement. *Delgado v. McTighe*, 91 F.R.D. 76, 78 (E.D.Pa.1981). The plaintiffs, then, have not sustained their burden of establishing that joinder is impracticable.

### 2. Common Questions of Law and Fact

Rule 23(a)(2) requires that there be questions of law or fact common to the class. It does not require a complete identity of legal claims. *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir.1974).

Here, the claim asserted by the plaintiffs raise numerous common factual and legal questions including: whether the defendants violated the Williams Act by disseminating a fraudulent tender offer to members of the proposed class; whether the $650,000 paid by Patrick to Sun constituted a portion of the purchase price paid by Patrick for shares sold to Patrick by Sun; and whether the defendants, having received a $650,000 additional payment from Patrick are liable to members of the class who did not receive the same price on a per share basis. Thus, the plaintiffs have satisfied this requirement.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the class representatives be typical of the claims of the class members. This requirement is met when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members. *Paxton v. Union National Bank*, 688 F.2d 552, 561–62 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). This requirement additionally focuses on the representatives' position with respect to the defendants' conduct. Where the representative parties are subject to unique defenses, their claim is not typical of the class. Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not the proper representative. *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461, (D.D.C. 1984). It is not necessary that the defense asserted against the proposed class representative ultimately succeed. Rather, the

presence of even an arguable defense peculiar to the proposed representative may destroy typicality of the class and bring the named plaintiffs' representation into question. *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir.1980).

■ In the instant case, the defendants arguably have an available defense peculiar to the named plaintiffs, in that the plaintiffs, at the time of the alleged fraud, regarded the defendants as "greenmailers" and felt that they had previously been defrauded by the defendants. Thus, the proposed representatives are subject to the defense of unjustified reliance, and are not appropriate class representatives. *Kas, supra* at 462. The potential availability of this defense with regard to the named plaintiffs' claims is further supported by the fact that both Daniel and Irvin Schermer are arguably sophisticated investors. Daniel Schermer is a former Federal Prosecutor and as such prosecuted numerous securities fraud cases. Since leaving the U.S. Attorney's office in 1985, Daniel Schermer has practiced extensively in the securities fraud area. Irvin Schermer is the founder of a prominent Minneapolis law firm and has managed a separate investment portfolio containing a wide variety of investment vehicles. Because of their sophistication a special knowledge, the proposed representatives' claims are subject to unique defenses that may have the ultimate effect of prejudicing members of the proposed class. *Id.; Weintraub v. Texasgulf, Inc.*, 564 F.Supp. 1466, 1471 (S.D.N.Y. 1983). Named plaintiffs are, therefore, not appropriate class representatives.

### 4. Adequacy of Representation

The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action. *Bishop v. Committee on Professional Ethics and Conduct of the Iowa State Bar Association*, 686 F.2d 1278, 1288 (8th Cir.1982). This criterion entails concern over whether the class representatives and their counsel will competently and vigorously pursue the lawsuit, and the concern that differences may exist between the interests of the class representatives and the class. *Dirks, supra* at 133. Defendants allege that the proposed class representatives and class counsel would not adequately protect the interests of the absent class members for several reasons.

#### a. *Close family relationship between counsel and class representative*

Courts have often denied class certification when the proposed class representative had a close familial relationship to the proposed class counsel. *See, e.g., Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir.1977) (securities fraud action) (plaintiff who was class counsel's brother was inadequate representative); *Turoff v. May Co.*, 531 F.2d 1357 (6th Cir.1976) (wife of attorney whose firm was counsel to class was not adequate representative); *Stull v. Pool*, 63 F.R.D. 702 (S.D.N.Y.1974) (wife of member of firm seeking to represent her cannot be a class representative). Not all courts that have addressed the issue, however, have denied certification. *See, e.g., Malchman v. Davis*, 588 F.Supp. 1047, 1057 (S.D.N.Y.1984) (one named plaintiff was a brother of class counsel, second named plaintiff was a sister of counsel's chauffeur, and third named plaintiff was a personal friend of class counsel); *Lewis v. Goldsmith*, 95 F.R.D. 15 (D.N.J. 1982) (named plaintiff represented by uncle's law firm); *Fischer v. ITT Corp.*, 72 F.R.D. 170 (E.D.N.Y.1976) (named plaintiff was father of the class attorney).

The primary concern of the courts in these cases has been the threat that the plaintiff may have an interest in the attorneys fees that the class counsel may ultimately seek. This interest may provide the class representative with an incentive to accept a settlement that is not in the interest of the class as a whole thus creating a conflict of interest between the class representative and the remainder of the class. *See, e.g., Susman v. Lincoln American Corp., supra* at 91. Courts that have allowed certification despite this threat have noted the absence of any concrete evidence

to support the existence of such collusion between closely related class counsel and class representatives.

■ In this case, the proposed class representative is the father of the proposed class counsel. Defendants attempt to support their assertion that the relationship will create a conflict of interest by citing to a similar case litigated by Daniel Schermer, *Sherman O. Jones and Irvin E. Schermer v. Shamrock Associates, et al,* 86 Civ. 4817 (S.D.N.Y.1986). *Shamrock Associates* was settled in favor of the plaintiffs and Daniel Schermer received $10,000 in attorneys fees, Irvin Schermer received reimbursement for out of pocket expenses, Sherman O. Jones received $25,000 for his individual claim, and the absent class members received nothing.

Plaintiffs have responded that defendants have mischaracterized the result in that case. In an affidavit filed by Daniel Schermer, he stated that although the lawsuit was originally filed as a proposed class action, it soon became clear that it was not viable as a class action because few shares had actually been tendered and the stock prices quickly recovered. (June 1, 1987 Affidavit of Daniel Schermer at 2.) The plaintiffs therefore attempted, and were successful in achieving, a prompt settlement before the class was ever certified.

Additionally, all named plaintiffs have filed affidavits disclaiming any interest in any legal fees that Daniel Schermer may obtain. Thus, defendants have not presented any evidence that the close family relationship between the class representatives is likely to create a conflict of interest. Further, any potential conflicts that may arise during settlement can be controlled by the court's power to review settlement agreements for fairness.

b. *Availability of Unique Defenses*

■ Defendants also assert that the named plaintiffs claims are subject to defenses that are inapplicable to the proposed class as a whole. Because the named plaintiffs were allegedly sophisticated investors and because plaintiffs allegedly believed the defendants were "greenmailers" at the time they tendered their shares, they cannot claim that they acted in reliance of the defendants alleged fraud.

Defendants' allegation is intertwined with the typicality requirement of 23(a)(3). In fact, it has been stated that the typicality requirement was "designed to buttress the fair representation requirement in Rule 23(a)(4)." *Rosado v. Wyman,* 322 F.Supp. 1173, 1193 (E.D.N.Y.1970), *aff'd on other grounds,* 437 F.2d 619 (2d Cir.), aff'd, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). Characteristics of the proposed class representatives that render them atypical also bring into question the adequacy of the named plaintiff's representation. For the reasons set forth in the discussion of the typicality requirement, the named plaintiffs are inadequate representatives.

c. *Necessity of class counsel's testimony*

■ The defendants assert that class counsel, Daniel Schermer, will be an essential witness at trial. According to the defendants, because Daniel Schermer was trustee of the Irvin E. Schermer Trust at the time that Trust tendered its Patrick shares, his testimony will be essential to establish that the Trust could not have tendered the shares in *justifiable* reliance on the defendants' alleged fraud.

Minn.R.Prof.Conduct 3.7 prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. It is indisputable that Daniel Schermer's testimony is likely to be essential in this case. As the only person with the legal authority to make the decision to tender the Patrick shares, Daniel Schermer's testimony as to his reliance on the alleged misrepresentations is an essential element of the defense. Thus, the likelihood that he will have to withdraw as counsel due to the necessity of his testimony precludes him from adequately representing the proposed class as class counsel. *See Susman v. Lincoln American Corp.,* 561 F.2d at 91.

For the reasons set forth above, IT IS ORDERED that:

Plaintiffs' motion to certify this action as a class action is denied.