LAW LIBRARY

**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

CYNTHIA NAKAMURA, individually and on behalf of all
others similarly situated, Plaintiff-Appellee,
v.
COUNTRYWIDE HOME LOANS, INC., Defendant-Appellant,
and
DOE DEFENDANTS 1-50, Defendants-Appellees

NO. 27993

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 04-1-1830)

FEBRUARY 8, 2010

NAKAMURA, C.J., AND FOLEY, J.[1]

OPINION OF THE COURT BY FOLEY, J.

This is an interlocutory appeal by Defendant-Appellant Countrywide Home Loans, Inc. (Countrywide) from the "Order Granting Plaintiff's Motion For (A) Class Certification and (B) to Approve Notice of Pendency of Class Action Filed on January 27, 2006" (Certification Order) filed on May 22, 2006 in the Circuit Court of the First Circuit (circuit court).[2]

On appeal,[3] Countrywide contends the circuit court abused its discretion by

(1)  certifying the class of mortgagors who were charged a fee by Countrywide for paying off their mortgages

---

[1]  Former Associate Judge Corinne K.A. Watanabe was a member of the panel on this appeal, but has since retired from her judgeship effective December 31, 2009.

[2]  The Honorable Bert I. Ayabe presided.

[3]  This Opinion was originally filed on December 29, 2009 as a Memorandum Opinion and is filed as a published Opinion pursuant to this court's February 8, 2010 "Order Granting Plaintiff-Appellee Cynthia Nakamura's Motion to Publish This Court's Memorandum Opinion filed on December 29, 2009."

(Class) without conducting the rigorous analysis required under Hawaiʻi Rules of Civil Procedure (HRCP) Rule 23 (Rule 23) to determine whether Plaintiff-Appellee Cynthia Nakamura (Nakamura), the Class representative seeking certification, carried her burden of proving compliance;

(2) holding that common issues predominate over individual issues and that a class action is the superior method for the adjudication of this controversy;

(3) holding that Nakamura met the typicality and adequacy requirements because she was subject to materially different statement fee practices than the majority of the absent Class members;

(4) holding that Nakamura and Class counsel met the adequacy requirement despite a conflict of interest; and

(5) directing Countrywide to identify Class members to Nakamura.

## I. BACKGROUND

Countrywide is a mortgage loan servicing company. Countrywide performs such tasks as maintaining escrow accounts, collecting and processing monthly loan payments, and performing administrative services incident to the handling of a mortgage loan payment.

On or about July 13, 1993, Nakamura and her husband obtained a mortgage loan, which was assigned to Countrywide on that date. The mortgage contained a release clause, which provided as follows: "Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower, Borrower shall pay any recordation costs." In August 2002, Nakamura sought to pay off the mortgage held by Countrywide and refinance the loan. Nakamura's escrow officer requested a payoff statement from Countrywide that listed the total amount due from Nakamura to release her mortgage. On August 12, 2002, Countrywide sent a payoff statement to Nakamura's escrow officer that included the

principal and interest due on the mortgage; the county recording fee; a subtotal consisting of the principal, interest, and recording fee; a "Statement Fee - Due From Closing Agent" of $60.00 (Statement Fee); and the "Total Due," which was comprised of the subtotal amount and the Statement Fee amount. Based on the HUD-1 Uniform Settlement Statement ("HUD-1") prepared by her escrow officer for the transaction, Nakamura paid the "Total Due" amount, which covered her mortgage, recording fee, and the Statement Fee.

On October 7, 2004, Nakamura and Janet Haole, both individually and on behalf of all others similarly situated, filed a complaint against Countrywide. Janet Haole was dismissed as a plaintiff by stipulation of the parties on October 3, 2005.

On November 17, 2005, Nakamura, individually and on behalf of all others similarly situated, filed a First Amended Complaint. In the class-action lawsuit, Nakamura stated that she "represents a class of mortgagors who have been damaged by [Countrywide's] unlawful and deceptive trade practices." Specifically, Nakamura alleged that Countrywide had no right to charge Statement Fees, in addition to principal and interest, before releasing its mortgages. She further alleged that Countrywide falsely implied to Nakamura and the Class that (1) the Statement Fee was secured by the mortgage, (2) the consumer had to pay the Statement Fee to have the mortgage released, and (3) Countrywide was authorized to charge the Statement Fee.

On appeal, Nakamura contends that Countrywide knew the Statement Fee was a sham because Countrywide had a secret policy of waiving the Statement Fee upon request, and she argues that Countrywide's charging of the Statement Fee amounts to an unfair or deceptive trade practice, in violation of Hawaii Revised Statutes (HRS) § 480-2 (1993).

On January 27, 2006, Nakamura filed a Motion for (A) Class Certification and (B) to Approve Notice of Pendency of Class Action (Certification Motion). On May 22, 2006, the

3

circuit court entered the Certification Order granting Nakamura's Motion. In the Certification Order, the circuit court, *inter alia*, (1) granted Class certification, (2) appointed Nakamura as Class representative, and (3) ordered Countrywide to provide Nakamura with a list of Class members' names and addresses.

On June 6, 2006, Countrywide filed an application to file an interlocutory appeal of the Certification Order. The circuit court granted Countrywide's application on June 20, 2006, and Countrywide timely filed its notice of appeal.

## II. STANDARD OF REVIEW

"The trial court is vested with broad discretion in deciding whether to certify a class and discretionary authority is normally undisturbed on review." Levi v. Univ. of Hawai'i, 67 Haw. 90, 92, 679 P.2d 129, 131 (1984). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

In Life of the Land v. Land Use Commission of Hawai'i, 63 Haw. 166, 623 P.2d 431 (1981), the Hawai'i Supreme Court stated that "[t]he party who seeks to utilize a class action must establish his right to do so." Id. at 180, 623 P.2d at 443. The court further stated that the party seeking class certification assumes a burden of establishing the four prerequisites for class certification delineated in Rule 23(a) and further demonstrating the presence of a suitable situation for the maintenance of a class action under the criteria set forth in at least one of the subdivisions of Rule 23(b). Id. A failure to satisfy the burden in any respect can result in a denial of the necessary certification. Id. at 181, 623 P.2d at 443 (footnotes omitted; emphasis added).

## III. DISCUSSION

### A. CLASS CERTIFICATION

"A trial court is vested with broad discretion in deciding whether to certify a class, and discretionary authority is normally undisturbed on review," unless the record discloses a possible "misapprehension or misapplication of Rule 23's criteria." Id. at 180, 623 P.2d at 443 (internal quotation marks and citation omitted). The Hawai'i Supreme Court has emphasized:

> The trial court must apply [Rule 23's] criteria to the facts of the case in determining whether the suit brought as a class action is to be so maintained, and if it fails to do this its determination is reviewable; but where it does apply the criteria to the facts of the case it has broad discretion as to whether the suit may be maintained as a class action, which the appellate court should normally respect.

3B Moore's Federal Practice ¶ 23.97, at 23-596 (1980).

Id. at 180 n.16, 623 P.2d at 443 n.16.

However, the party seeking to utilize a class action must establish his or her right to do so. Life of the Land, 63 Haw. at 180, 623 P.2d at 443. Thus, the party requesting class certification assumes the burden of establishing the four prerequisites for class certification under Rule 23(a) and "demonstrating the presence of a suitable situation for the maintenance of a class action under the criteria set forth in at least one of the subdivisions of Rule 23(b)." Id. at 181, 623 P.2d at 443.

In the instant case, Nakamura had to show all of the following to meet her burden for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class exist; (3) the claims or defenses of the representative parties are typical of those of the class; (4) the representative parties fairly and adequately will protect the class's interest; and (5) questions of law or fact common to the class predominate over questions affecting individual members, and a class action is

superior over available methods for the fair and efficient adjudication of the controversy. Rule 23(a) and (b)(3).

### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) provides that a class action is only maintainable where "the class is so numerous that joinder of all members is impracticable." The key inquiry is "Who Are The Proposed Class, and the specific criteria are that its members be identifiable and their possible joinder impracticable." Life of the Land, 63 Haw. at 181, 623 P.2d at 444 (internal quotation marks and citation omitted).

In this case, the Certification Order defined the Class as follows:

> Hawaii Consumers who, during the period from October 7, 2000 to the date on which this order is filed, paid a "Statement Fee" to [Countrywide] in connection with the payoff of their note and mortgage. Excluded from the Class are [Countrywide] and its subsidiaries, parents, and affiliates, including all directors, officers and employees.

The record denotes that there were over 19,000 Countrywide loans on which a Statement Fee was charged to Hawai'i consumers. It is unclear from the record exactly how many Statement Fees were paid directly by the consumer and how many were paid by third parties. However, it is clear from Countrywide's admissions in the record that there were numerous consumers who either paid the Statement Fee directly or indirectly through their closing escrow agent and, thus, would be members of the proposed Class. Furthermore, Countrywide has not contended on appeal that the number of proposed Class members is insufficient. Therefore, this court will not disturb the finding of requisite "numerosity" in the Certification Order.

### 2. Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class. The inquiry focuses on "What Are The Claims Or Defenses Of The Class, and the pertinent criterion is the presence of common claims or defenses extending throughout

the class." Life of the Land, 63 Haw. at 182, 623 P.2d at 444 (internal quotation marks and citation omitted).

Nakamura's First Amended Complaint alleges several factual and legal issues of common concern to persons affected by Countrywide's conduct. Specifically, Nakamura states:

> (a) Each Class member paid off a mortgage to [Countrywide];
>
> (b) Each payoff was for an amount dictated by [Countrywide];
>
> (c) Each Class member was charged a "Statement Fee";
>
> (d) If [Nakamura] proves that these fees were improperly charged or disclosed then each Class member was damaged in the identical manner[;]
>
> (e) A common question of fact and/or law is whether [Countrywide] committed an unfair or deceptive trade practice in charging the Class a "Statement Fee"[;]
>
> (f) A common question of fact and/or law is whether [Countrywide] needed to disclose to the Class (and/or not to falsely imply otherwise) that [Countrywide] was obligated to release the mortgage without payment of a Statement Fee and/or that the Statement Fee would not be charged or reimbursed if requested[;]
>
> (g) A common question of fact and/or law is whether [Countrywide] should be enjoined from engaging in the alleged wrongful acts listed above[;]
>
> (h) A common question of fact and/or law is the total amount of money which [Countrywide] obtained from their wrongful act and how much total funds should [Countrywide] be required to disgorge.

Based on the allegations in the First Amended Complaint and the fact that Countrywide does not contend on appeal that the circuit court was incorrect in finding "commonality," there is no basis for overruling the circuit court's implicit finding on the existence of common issues and facts under Rule 23(a)(2).

### 3. Rule 23(a)(3): Typicality

Under Rule 23(a)(3), a prerequisite to class certification is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The critical question is "What Is The Individual Claim (Or Defense) Of The Class Representative, and the primary

requisite is that his [or her] claim or defense be essentially similar . . . throughout the class." Life of the Land, 63 Haw. at 182, 623 P.2d at 444.

The Hawai'i Supreme Court has found that the "typicality" requirement of Rule 23(a)(3) has an affinity to the "adequacy" requirement of Rule 23(a)(4) and read together focus on whether there is a conflict of interest between class members. Life of the Land, 63 Haw. at 182-83, 623 P.2d at 444-45. The Hawai'i Supreme Court explained what it meant by a conflict of interest:

> Where colorable [claims or] defenses may derive from particular circumstances, rather than from those common to the putative [plaintiff or] defendant class, a class certification is improper. And where there is indication that the representative may be particularly interested in a claim or defense unique to him or a subclass, the court is justified in denying class action certification on the grounds of inadequate representation.

Id. at 184, 623 P.2d at 445 (internal quotation marks, citations, and brackets omitted).

Countrywide contends the circuit court abused its discretion by holding that Nakamura met the typicality requirement because she was subject to materially different Statement Fee practices than the majority of the absent Class members. Countrywide argues that Nakamura's claims are not typical of Class members because the Statement Fee practices at the time of Nakamura's claims are different from the Statement Fee practices of post-November 25, 2002 Class members.

Between October 7, 2000 and November 25, 2002, Countrywide charged a $60 Statement Fee to the closing escrow agent for its payoff statement service on conventional loans secured by property located in Hawai'i, but Countrywide provided a free alternative on the internet. After November 25, 2002, Countrywide changed its statement fee practices. Countrywide began charging a $30 Statement Fee directly to the consumer and offered free alternatives by internet and mail. Citing to Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 141 P.3d 427

(2006), Countrywide argues that these factual differences are critical because the Hawai'i Supreme Court has held that the determination of whether there is an unfair or deceptive trade practice under HRS § 480-2 depends upon the totality of the circumstances. Countrywide maintains that a judgment rendered in favor of Nakamura cannot be applied to the post-November 25, 2002 Class members because their claims arise in a wholly different context and under different circumstances.

Although there are incidental factual differences between Nakamura and the Class members, the nature of Nakamura's individual claim and the Class members' claims are essentially similar and there is no conflict of interest. Nakamura and the Class alleged that Countrywide's practices relating to the collection of Statement Fees from borrowers constituted a deceptive trade practice under HRS § 480-2. Specifically, Nakamura and the Class both argue on appeal that

> (1) Countrywide charged a Statement Fee; (2) the consumer was paying off a Countrywide mortgage; (3) Countrywide claimed that the fee was for a "service" and yet its internal documents stated that the fee is to "recoup some of the costs that we incur when paying off the loan"; (4) Countrywide had a hidden policy of waiving or refunding the fee; and (5) its notes and mortgages did not authorize Countrywide to charge the fee.

HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or <u>deceptive acts</u> or practices in the conduct of any trade or commerce are unlawful." (Emphasis added). The Hawai'i Supreme Court has found that the dispositive issue in HRS § 480-2 cases is whether the allegedly deceptive practice is "likely to mislead consumers acting reasonably under the circumstances." <u>Courbat</u>, 111 Hawai'i at 262, 141 P.3d at 435. Actual deception is not required -- the capacity to deceive is sufficient. <u>State of Hawai'i ex rel. Bronster v. U.S. Steel Corp.</u>, 82 Hawai'i 32, 51, 919 P.2d 294, 313 (1996). "This is an objective test, and therefore actual reliance need not be established." <u>Yokoyama v. Midland Nat'l Life Ins. Co.</u>, No. 07-16825, 2009 WL 2634770, at *1 (9th Cir. Aug. 28, 2009).

In the instant case, regardless of the minor factual differences in the Statement Fee policies before and after November 25, 2002, the dispositive issue in both Nakamura's individual claim and the Class action is whether Countrywide's alleged act of charging a Statement Fee constitutes a deceptive act under HRS § 480-2. There is no need to look at the circumstances of each individual consumer because the allegations of the complaint are narrowly focused on the allegedly deceptive practices of Countrywide, and it is only necessary for the factfinder to determine whether those practices were capable of misleading a reasonable consumer. Therefore, this court concludes the circuit court did not abuse its discretion in finding that Nakamura's claim was typical of the Class members under Rule 23(a)(3).

### 4. Rule 23(a)(4): Adequacy

Rule 23(a)(4) provides that a class action can be certified if the class representative and class counsel will fairly and adequately protect the interests of the class. The Hawai'i Supreme Court explained that "[w]here claims or defenses are coextensive, there is a probability of fair and adequate representation; where they are potentially conflicting, absentees are unlikely to be afforded representation consistent with notions of fairness and justice." Life of the Land, 63 Haw. at 183, 623 P.2d at 445.

Countrywide contends the circuit court abused its discretion in finding that Nakamura met her burden of establishing Rule 23(b)(4) because (1) Nakamura was subject to materially different statement fee practices than the majority of the absent Class members and (2) Nakamura and Class counsel have a conflict of interest because of their familial relationship.

First, Countrywide argues that Nakamura is not an adequate representative because she was subject to materially different Statement Fee practices than the majority of Class members. The circuit court did not abuse its discretion in

10

finding that Nakamura was an adequate representative. Despite minor factual differences, Nakamura's individual claim and the Class members' claims are coextensive and without conflict. Both claims are based on the same exact Countrywide conduct of charging an unauthorized Statement Fee. Additionally, Nakamura and the Class have suffered the same alleged injury of being forced to pay that Statement Fee. Furthermore, as analyzed above, the dispositive issue in both claims is whether Countrywide's conduct constitutes a deceptive act under HRS § 480-2. Because Nakamura and the Class possess the same interest and have suffered the same injury, Nakamura is likely to prosecute the Class members' case as she would litigate her own.

Second, Countrywide argues it was an abuse of discretion to find that Nakamura and Class counsel met the adequacy requirements of Rule 23(a)(4) despite an irreconcilable conflict of interest between them and the Class members. Specifically, Countrywide argues that Nakamura and Class counsel are inadequate representatives because Nakamura's brother, John Shimizu, is a partner in one of the law firms acting as Class counsel and thus stands to gain financially from the prosecution of this case.

Countrywide cites to several federal court decisions where courts have found a class representative inadequate because of a close familial relationship to class counsel.[4] The primary concern of the courts in these cases has been the threat that the class representative may have an interest in the attorneys' fees the class counsel will seek. See, e.g., Susman v. Lincoln Am. Corp., 561 F.2d 86, 91 (7th Cir. 1977). In Susman, a consolidated appeal, the United States Court of Appeals for the Seventh Circuit affirmed a lower court decision that denied class

_____

[4] See Susman v. Lincoln Am. Corp., 561 F.2d 86, 91 (7th Cir. 1977); Zlotnick v. TIE Commc'ns, Inc., 123 F.R.D. 189, 193-94 (E.D. Pa. 1988); Helfand v. Cenco, Inc., 80 F.R.D. 1, 6-7 (N.D. Ill. 1977); Stull v. Pool, 63 F.R.D. 702, 704 (S.D.N.Y. 1974).

certification because Plaintiff Michael Susman (Michael), the named class representative in one of the consolidated cases, did not satisfy the adequacy requirements of Federal Rules of Civil Procedure (FRCP) Rule 23(a)(4). Id. at 87-89 & 92. Michael was found to be an inadequate class representative because he was the brother of class counsel, who was one of only two attorneys representing Michael and the class. Id. at 89. The Seventh Circuit noted that Michael's "possible recovery as plaintiff is dwarfed by attorney's fees which could be awarded to his brother as class counsel." Id. at 95. This being the case, the Seventh Circuit agreed with the district court's statement that "there exists the possibility that one so situated will become more interested in maximizing the 'return' to his counsel than in aggressively presenting the proposed class' [sic] action." Id. However, it should be noted that neither Susman nor any of the other cases cited to by Countrywide held that there is a per se rule of disqualification when class representative and class counsel are closely related.

On the other hand, Nakamura has cited to several federal court decisions where the federal courts granted class certification despite a close familial relationship between class representative and class counsel.[5] See, e.g., Irvin E. Schermer Trust v. Sun Equities Corp., 116 F.R.D. 332, 338 (D. Minn. 1987). In Schermer, the United States District Court for the District of Minnesota found a class representative adequate under FRCP Rule 23(a)(4) even though the class representative was the father of class counsel. Id. at 338. The district court adopted the reasoning of other federal courts that have granted class certification despite a familial relationship between class representative and class counsel because of the absence of any

---

[5] See Irvin E. Schermer Trust v. Sun Equities Corp., 116 F.R.D. 332, 338 (D. Minn. 1987); Lewis v. Goldsmith, 95 F.R.D. 15, 20 (D.N.J. 1982); Fischer v. Int'l Tel. & Tel. Corp., 72 F.R.D. 170, 173-74 (E.D.N.Y. 1976).

concrete evidence to support the existence of such collusion. Id. at 337-38.

In the instant case, Nakamura and the Class are represented by two law firms: Van Buren Campbell & Shimizu and Alston Hunt Floyd & Ing. Nakamura is the sister of John Shimizu, a partner in Van Buren, Campbell & Shimizu. Other than the fact that Nakamura and Shimizu are brother and sister, Countrywide has presented no evidence that the relationship will create a conflict of interest. Furthermore, Nakamura states, and Countrywide does not dispute, that Shimizu has no personal involvement in the case whatsoever.

Given that there is no per se rule of disqualification, Countrywide has not presented any evidence of a conflict of interest, and the circuit court has wide discretion in certifying a class, this court concludes the circuit court did not abuse its discretion in finding Nakamura and Class counsel met the adequacy requirements of Rule 23(a)(4).

## 5. Rule 23(b)(3): Predominance and Superiority

To certify a class, a plaintiff must meet the prerequisites of Rule 23(a) and one of the subdivisions of Rule 23(b). In this case, Nakamura sought to certify the Class under Rule 23(b)(3), which provides:

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Countrywide argues that the circuit court abused its discretion by holding that common issues predominate over individual issues and that a class action is the superior method for the adjudication of this controversy. Specifically, Countrywide argues that individualized proof (a) regarding each Class member's knowledge of and agreement to pay the Statement Fee bears directly upon Countrywide's defenses, (b) is necessary to establish the contractual violation element of Nakamura's class claims, and (c) is necessary to establish the injury element of Nakamura's class claims.

### a.    Predominance

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). When common questions are a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998). Thus, if proof of the essential elements of the cause of action requires individual treatment, then predominance is defeated and the class should not be certified. In re: Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008).

Nakamura's primary claim is that Countrywide's Statement Fee policies and practices constitute a deceptive practice under HRS § 480-2. As stated above, the dispositive issue in HRS § 480-2 cases is whether the alleged deceptive practice "is likely to mislead consumers acting reasonably under the circumstances." Courbat, 111 Hawai'i at 262, 141 P.3d at 435. "A deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Id. (internal quotation

14

marks, citation, and brackets omitted). The representation, omission, or practice is material if it is likely to affect a consumer's choice. Id. Whether information is likely to affect a consumer's choice is an objective inquiry, "turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service." Id. (internal quotation marks, citations, and footnote omitted).

Despite Countrywide's argument that individual issues predominate over common questions, the key inquiry in both Nakamura's individual claim and the Class action is whether Countrywide's Statement Fee practices constitute deception under HRS § 480-2. Specifically, the question is whether Countrywide's Statement Fee practices, as a natural and probable result, misled and caused Nakamura and the Class to pay the Statement Fee when they would not otherwise have done so. The proof of the essential elements of HRS § 480-2 do not require individual treatment because the dispositive question revolves around Countrywide's alleged deceptive practices and not individual Class member transactions. Thus, it is Countrywide's alleged act of withholding information about the Statement Fee waiver policy that will predominate and form the basis of Nakamura's individual claim and the Class action under HRS § 480-2. Therefore, this court concludes the circuit court did not abuse its discretion in finding predominance.

### b. Superiority

Under Rule 23(b)(3), class certification is appropriate if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Having already found that common questions of fact and law predominate over individual issues, it follows that a class action is the superior method to adjudicate this case. Nakamura's individual claim and the Class action hinge on whether Countrywide's conduct constitutes a deceptive practice under HRS § 480-2. This being

the case, the most fair and efficient adjudication of the controversy is through a class action.

Moreover, Hawaii's consumer protection laws may be enforced through class actions. See HRS § 480-13(c) (1993 & Supp. 2000) ("The remedies provided in subsections (a) and (b) shall be applied in class action and de facto class action lawsuits or proceedings."). This court has also recognized that consumer protection laws are enforceable through class actions. See Fuller v. Pac. Med. Collections, Inc., 78 Hawaiʻi 213, 218, 891 P.2d 300, 305 (App. 1995). Therefore, this court concludes that the circuit court did not abuse its discretion in finding superiority under Rule 23(b)(3).

### B. COUNTRYWIDE'S REMAINING ARGUMENTS

### 1. Rigorous Analysis

Countrywide contends the circuit court abused its discretion by failing to perform the required "rigorous analysis" of the Rule 23 requirements. Countrywide cites to the United States Supreme Court case General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982), which states that a class may only be certified after a "rigorous analysis" that the prerequisites of FRCP Rule 23 have been satisfied. Countrywide argues that a "rigorous analysis" requires that "a trial court go beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." (Emphasis in original.) Therefore, Countrywide argues that the circuit court's Certification Order failed to comply with this "rigorous analysis" standard because the order was "inadequate, cursory and conclusory."

Countrywide partially misstates the law of General Telephone. In General Telephone, the Supreme Court stated:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind

the pleadings before coming to rest on the certification question.

_Id._ at 160. Thus, a "rigorous analysis" does not require the court to go beyond the pleadings when the pleadings themselves indicate that the requirements of Rule 23 have been met.

In the instant case, the Certification Order provides:

> The requirements of [HRCP] Rule 23(a) and (b)(3) are met as demonstrated in [Nakamura's] arguments, motion and supporting memoranda. The Class is so numerous that joinder of all members is not practicable; there are questions of law or fact common to the Class; [Nakamura's] claims are typical of the claims of the Class; [Nakamura] and her counsel will fairly and adequately protect the interests of the Class; questions of law and fact common to the Class predominate over any questions affecting only individual members; and a class action is superior to other available methods of adjudicating this controversy.

By examining Nakamura's pleadings, the circuit court was able to determine that the interests of the absent parties were fairly encompassed by Nakamura's claims. Thus, the circuit court conducted the requisite "rigorous analysis" and did not abuse its discretion.

### 2. List of Class Members

Countrywide contends the circuit court abused its discretion by directing Countrywide to identify Class members to Nakamura. Specifically, the Certification Order directs Countrywide to "provide to [Nakamura] a list of Class members' names and addresses."

The United States Supreme Court has held that FRCP "Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice." _Oppenheimer Fund, Inc. v. Sanders_, 437 U.S. 340, 354 (1978) (footnote omitted). The general rule is that the representative plaintiff should bear the burden of performing tasks necessary to send class notice. _Id._ at 357. However, in some instances, the defendant may be able to perform the necessary task with less difficulty or expense than could the representative plaintiff. _Id._ at 356. Thus, FRCP Rule 23 authorizes a district court in

appropriate circumstances to require a defendant's cooperation in identifying the class members to whom notice must be sent. Id. at 355.

Countrywide is in the best position to identify Countrywide customers who were charged a Statement Fee and who subsequently paid that Statement Fee. Therefore, the Circuit Court did not abuse its discretion in ordering Countrywide to provide a list to Nakamura of Class members' names and addresses.

## IV. CONCLUSION

The "Order Granting Plaintiff's Motion For (A) Class Certification and (B) to Approve Notice of Pendency of Class Action Filed on January 27, 2006" filed on May 22, 2006 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Patricia J. McHenry and
W. Keoni Shultz
(Cades Schutte LLP)
Brooks R. Brown, pro hac vice
(Goodwin Procter LLP)
for Defendant-Appellant.

Paul Alston,
Bruce H. Wakuzawa, and
Peter Knapman
(Alston Hunt Floyd & Ing)
George Van Buren and
Robert Campbell
(Van Buren Campbell & Shimizu)
for Plaintiff-Appellee.

*Craig K. Nakamura*

*Daniel R. Foley*